UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Harbour Capital Corporation**

      **v.**                                 Case No. 08-cv-506-PB
                                                 Opinion No. 2009 DNH 106

**Allied Capital Corporation**

## MEMORANDUM AND ORDER

Harbour Capital Corporation ("Harbour") has filed a complaint against Allied Capital Corporation ("Allied") alleging tortious interference with contractual relations and unfair trade practices under New Hampshire Revised Statutes Annotated ("RSA") § 358-A:2.  Allied now moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2)[1] and (6) claiming that this Court does not have personal jurisdiction over Allied and that Harbour has failed to state a claim in Count II.  Harbour objects.  For the reasons set forth below, I deny Allied's motion to dismiss.

---

[1] Allied's memorandum of law in support of its motion to dismiss states that it is moving to dismiss under Federal Rule of Civil Procedure 12(b)(1).  (Doc. No. 8-2 at 1).  It is clear, however, that Allied's defense is that the Court lacks personal jurisdiction over Allied, not that the Court lacks subject-matter jurisdiction.  Accordingly, Allied's motion to dismiss is pursuant to Federal Rule of Civil Procedure 12(b)(2), not Federal Rule of Civil Procedure 12(b)(1).

## I. <u>FACTUAL OVERVIEW</u>[2]

### A.   <u>BUSINESS RELATIONSHIPS AND OWNERSHIP INTERESTS OF THE PARTIES</u>

Harbour, a New Hampshire corporation with its principal place of business in Newington, New Hampshire, is in the business of equipment leasing and financing throughout the United States. Allied is incorporated in Maryland and is headquartered in Washington, D.C.  Financial Pacific Leasing, LLC ("FinPac"), a direct provider of commercial equipment leases, is a subsidiary of Allied and has a principal place of business in the State of Washington.  Direct Capital Corporation ("Direct") has a principal place of business in Portsmouth, New Hampshire.  Direct and Harbour are competitors in the business of equipment leasing and financing.

For over seven years, beginning in or around August 2001, Harbour had an ongoing broker relationship with FinPac.  Under their Broker Agreement, which was signed in New Hampshire by Harbour's Senior Vice President of Credit and Operations, Harbour acted as a broker, referring transactions to FinPac in exchange for a commission.  Harbour performed under the Broker Agreement

---

[2] I describe the facts in the light most favorable to Harbour, the non-movant.  I accept facts submitted by Harbour as true for purposes of deciding Allied's motion to dismiss.

at its offices in New Hampshire.  The Broker Agreement was profitable for both Harbour and FinPac.  The Broker Agreement selects Washington in a choice-of-venue provision.

According to an Allied press release and filings with the Securities and Exchange Commission ("SEC"), in the first quarter of 2007, Allied invested $55.0 million to acquire a majority interest in Direct.  In the first quarter of 2008, Allied invested an additional $18.1 million in Direct.  Since investing in Direct, Allied has consistently filed 10-Qs with the SEC identifying Direct as one of many companies in which Allied has a more than 25% ownership interest.  According to an Affidavit submitted with Allied's Motion to Dismiss, however, Allied "does not hold any shares or other direct interest in Direct Capital Corporation.  Instead, Allied Capital has a controlling ownership interest in a Delaware corporation known as DCC Holdings Inc. DCC Holdings, Inc. owns Direct Capital Corporation." See Affidavit of Ralph Blasey at ¶¶ 5-6.  DCC Holdings, Inc. has a principal place of business in Portsmouth, New Hampshire at the same address as Direct.  According to SEC Form D filings, Allied Capital is a beneficial owner of DCC Holdings, Inc.  Minority owners of DCC Holdings include, Edward Broom, Christopher Broom, and James Broom, the principals of Direct.

-3-

B.      **ALLEGED TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP**

In April 2007, Harbour commenced litigation that is still ongoing against Direct in Rockingham County Superior Court in New Hampshire.  Several times prior to October 2008, Allied asked FinPac to terminate its relationship with Harbour.  In or around October 2008, Allied instructed FinPac to discontinue its relationship with Harbour because of Harbour's ongoing litigation with Direct.  Harbour alleges that at that time, it was in FinPac's economic interests to continue its relationship with Harbour.  On October 20, 2008, however, Terey Jennings, a FinPac employee, called Chip Kelley, President of Harbour, in New Hampshire and informed him that Allied instructed FinPac to terminate its relationship with Harbour.  On October 21, 2008, Jennings forwarded an e-mail attaching a letter to Kelley in New Hampshire stating "[w]e are being instructed by our parent company, Allied Capital, to discontinue our relationship with Harbour Capital Corporation.  This is due to ongoing legal issues Harbour Capital is having with another one of the companies owned by Allied Capital."  As a result, FinPac's revenue stream to Harbour in New Hampshire was cut off.  Harbour has suffered economic loss in New Hampshire as a result of Allied's interference.

## C.    PROCEDURAL HISTORY

Harbour has filed a three-count Complaint.  Count I alleges that Allied tortiously interfered with Harbour's contractual relations with FinPac.  Count II alleges that Allied engaged in unfair trade practices under New Hampshire's Consumer Protection Act, RSA § 358-A:2.  Count III alleges that Harbour is entitled to an award of enhanced compensatory damages.

Allied now moves to dismiss because this court does not have personal jurisdiction over Allied and because Harbour's § 358-A claim fails as a matter of law.  Harbour objects.


## II.   STANDARD OF REVIEW

## A.   PERSONAL JURISDICTION

When a defendant contests personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of showing that a basis for asserting jurisdiction exists.  Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008).  Because I have not held an evidentiary hearing, Harbour need only make a prima facie showing that the court has personal jurisdiction over Allied.  See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n. 1 (1st Cir. 1995)(citing United Elec. Radio & Mach. Workers of America v. 163 Pleasant Street Corp., 987 F.2d 39, 43 (1st Cir. 1993)).

To make a prima facie showing of jurisdiction, a plaintiff may not rest upon the pleadings.  Rather, the plaintiff must "adduce evidence of specific facts" that support its jurisdictional claim.  See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).  I do not act as a factfinder when considering whether a plaintiff has made a prima facie showing of personal jurisdiction.  Rather, I determine "whether the facts duly proffered, [when] fully credited, support the exercise of personal jurisdiction." Rodriquez v. Fullerton Tires Corp., 115 F.3d 81, 84 (1st Cir. 1997).  While the prima facie standard is liberal and I construe the facts offered by the plaintiff in the light most favorable to its claim, I need not "credit conclusory allegations or draw farfetched inferences."  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)(citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

## B.  **FAILURE TO STATE A CLAIM**

On a motion to dismiss for failure to state a claim, I accept as true the well-pleaded factual allegations of the complaint and draw all reasonable inferences therefrom in the plaintiff's favor.  Martin v. Applied Cellular Tech., Inc., 284

F.3d 1, 6 (1st Cir. 2002).  Although the complaint does not need
detailed factual allegations, "more than an unadorned, the-
defendant-unlawfully-harmed-me accusation" is required.  Ashcroft
v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  "Threadbare recitals of
the elements of a cause of action, supported by mere conclusory
statements, do not suffice."  Id.

### III.  <u>ANALYSIS</u>

**A.   <u>WHETHER PERSONAL JURISDICTION EXISTS OVER ALLIED</u>**

Allied contends that Harbour has failed to allege sufficient
facts to establish that it is subject to this action in New
Hampshire.  Federal Rule of Civil Procedure 4(k)(1)(A) provides
that "[s]erving a summons or filing a waiver of service
establishes personal jurisdiction over a defendant . . . who is
subject to the jurisdiction of a court of general jurisdiction in
the state where the district court is located."  Thus, when
assessing personal jurisdiction over a non-resident defendant in
a diversity of citizenship case such as this one, the federal
court "'is the functional equivalent of a state court sitting in
the forum state.'" Sawtelle, 70 F.3d at 1387 (quoting
Ticketmaster, 26 F.3d at 204).  Because New Hampshire's relevant
long-arm statute, N.H. Rev. Stat. Ann. § 293-A:15.10, authorizes

jurisdiction to the full extent permitted by the Federal
Constitution, the sole inquiry in this case is "whether the
exercise of personal jurisdiction comports with federal
constitutional standards."  Sawtelle, 70 F.3d at 1388.

The Fourteenth Amendment's Due Process Clause precludes a
court from asserting jurisdiction over a defendant unless "the
defendant's conduct and connection with the forum State are such
that [it] should reasonably anticipate being haled into court
there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286,
297 (1980).  The "constitutional touchstone" for personal
jurisdiction is "whether the defendant purposefully established
'minimum contacts' in the forum State."  Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 474 (1985)(quoting Int'l Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945)).  The inquiry into "minimum
contacts" is necessarily fact-specific, "involving an
individualized assessment and factual analysis of the precise mix
of contacts that characterize each case."  Pritzker v. Yari, 42
F.3d 53, 60 (1st Cir. 1994).  A defendant cannot be subjected to
the forum state's jurisdiction based solely on "random,"
"fortuitous," or "attenuated" contacts.  Burger King, 471 U.S. at
475 (quotations omitted).  Rather, "'it is essential in each case
that there be some act by which the defendant purposefully avails

-8-

itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

A court may exercise authority over a defendant by means of either general or specific jurisdiction. Northern Laminate Sales, Inc. v. David, 403 F.3d 14, 24 (1st Cir. 2005)(citation omitted). General jurisdiction exists over a defendant who has maintained "continuous and systematic" activity in a forum sufficient to establish jurisdiction in that state over all matters including matters unrelated to the defendant's contacts to the forum state. Id. (citing Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999)). In contrast, specific jurisdiction is narrower in scope and exists only when the cause of action arises from or relates to, the defendant's contacts with the forum state. Id. The First Circuit has set forth three prongs by which to analyze whether specific jurisdiction exists: "relatedness, purposeful availment, and reasonableness." Phillips v. Prairie Eye Center, 530 F.3d 22, 27 (1st Cir. 2008); Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 60 (1st Cir. 2002). To carry its burden to show personal jurisdiction, "[t]he plaintiff must demonstrate that each of these three requirements is

satisfied."  Phillips, 530 F.3d at 27.

Harbour bases its jurisdictional argument on specific jurisdiction.[3]  Thus, the First Circuit's three-prong analysis of relatedness, purposeful availment, and reasonableness applies, and I focus my analysis accordingly.

###   1.  *Relatedness*

"The evidence produced to support specific jurisdiction must show that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts."  Harlow v. Children's Hosp., 432 F.3d 50, 60-61 (1st Cir. 2005).  The relatedness prong is a "flexible, relaxed standard," Pritzker, 42 F.3d at 61, which is applied "through the prism" of the plaintiff's claims, Sawtelle, 70 F.3d at 1389.  In a contract case, the court must consider whether defendant's forum-based activities were instrumental in the formation or breach of the contract.  Phillips Exeter Acad., 196 F.3d at 289.  In a tort

---

[3] Harbour states that it is moving on the premise that this Court has specific jurisdiction over Allied, and that "it does not appear that Allied engages in 'continuous and systematic' activity within New Hampshire as required by the general jurisdiction line of cases."  (Pl.'s Mem. of Law in Support of Obj. to Def.'s Mot. to Dismiss, Doc. No. 11-2 at 7 n.3.)  However, if the Court orders jurisdictional discovery on these issues, Harbour seeks discovery relating to both general and specific jurisdiction.

case like the present one, the court "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action."  Id.  Courts ordinarily ask both whether "the injury would not have occurred 'but for' the defendant's forum activity" (cause in fact) and whether "the defendant's in-state conduct gave birth to the cause of action" (proximate cause).  Mass. Sch. of Law, 142 F.3d at 35.  The First Circuit has noted, however, that in cases such as the present case, where "the tort is intentional interference with a contractual or business relationship, the two inquiries begin to resemble each other." Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd., 298 F.3d 1, 10 (1st Cir. 2002).

A determination of relatedness begins with an identification of all of the defendant's alleged contacts with the forum state. United States v. Swiss Am. Bank, 274 F.3d 610, 621 (1st Cir. 2001) (reasoning that there can be "no requisite nexus between the contacts and the cause of action if no contacts exist").  In this case, there is no allegation that Allied's communication with FinPac occurred in New Hampshire, nor is there any allegation that Allied directly contacted Harbour in New Hampshire.  The only Allied contacts with New Hampshire alleged by Harbour are (1) FinPac's contact with Harbour in New Hampshire

-11-

at the direction of Allied; and (2) Allied's ownership stake in DCC Holdings and Direct in New Hampshire.

Allied asserts that because there is no direct contact between it and New Hampshire, only contact between FinPac and New Hampshire, the relatedness prong cannot be satisfied by virtue of Allied's alleged instruction to FinPac.  Allied contends that Harbour is seeking to apply a transitive theory of minimum contacts not subscribed to by the First Circuit in order to confer personal jurisdiction over Allied based on FinPac's telephone calls and emails to Harbour in New Hampshire reporting Allied's out-of-state actions.  See Mass. Sch. of Law, 142 F.3d at 35 (rejecting a transitive view of minimum contacts and holding that there was no contact sufficient for jurisdiction over C in B's home state, where A sent a letter to B reporting on C's out of forum actions).  Further, Allied contends that Harbour is improperly seeking to satisfy the relatedness prong by merely asserting that Harbour suffered in-forum injury due to Allied's out-of-forum activities.  See id. at 36.

Harbour asserts that it is not seeking to apply a transitive theory of minimum contacts.  Nor does it base its claim to personal jurisdiction solely on the fact that it was injured in New Hampshire.  Rather, Harbour contends that the relatedness

-12-

prong of the jurisdictional inquiry is satisfied because Allied

knew of Harbour's economic relationship with FinPac in New

Hampshire; Allied instructed its subsidiary, FinPac, to terminate

the relationship in order to punish Harbour and benefit Direct;

FinPac acted on Allied's instructions by contacting Harbour in

New Hampshire and informing it of Allied's instructions; and the

resulting economic impact was felt by Harbour in New Hampshire.

(Pl.'s Obj., Doc. No. 11-2).   In this respect, Harbour is

alleging not only an effect on Harbour in New Hampshire, but also

that Allied used FinPac to purposefully target an economic

relationship with a New Hampshire locus in order to cause harm to

Harbour and benefit Direct.

Although Allied has an ownership stake in FinPac,

> [t]he mere fact that a subsidiary company does business
> within a state does not confer jurisdiction over its
> nonresident parent, even if the parent is sole owner of
> the subsidiary.  There is a presumption of corporate
> separateness that must be overcome by clear evidence
> that the parent in fact controls the activities of the
> subsidiary.

Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir.

1980)(internal citations omitted); see also Cannon Mfg. Co. v.

Cudahy Packing Co., 267 U.S. 333 (1925) (holding that a parent-

subsidiary relationship is by itself an insufficient reason to

pierce the corporate veil in the jurisdictional context); Platten

v. HG Bermuda Exempted Ltd., 437 F.3d 118, 139 (1st Cir. 2006);
Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465-66 (1st Cir.
1990) (noting that in order to attribute a subsidiary's contact
to its parent corporation, the plaintiff must demonstrate "a plus
factor -- something beyond the subsidiary's mere presence within
the bosom of the corporate family").  This "presumption of
corporate separateness" persists unless Harbour can demonstrate
that Allied's control over FinPac is "greater than that normally
associated with common ownership and directorship." Donatelli,
893 F.2d at 466 (citations omitted).

     FinPac's October 21, 2008 letter clearly demonstrates that
Allied was exerting control over FinPac.  The letter states that
FinPac was acting on a directive of Allied when it terminated its
relationship with Harbour due to Harbour's litigation with Direct
in New Hampshire.  Given this letter, there is no reason to
believe that FinPac would have acted in New Hampshire and
terminated its relationship with Harbour, causing Harbour
economic injury in New Hampshire, but for Allied's directive.
Allied's actions did not merely result in an injury to Harbour in
New Hampshire.  Rather, Allied's actions constituted control over
FinPac's actions in New Hampshire so as to terminate the
FinPac/Harbour contract.  The letter makes clear that Allied

-14-

reached into New Hampshire through its subsidiary to interfere with a contract that was executed in New Hampshire, that was performed in part in New Hampshire, and that produced profits derived from trade and commerce in the state.

Because the evidence indicates that FinPac was acting at the behest and direction of Allied when it contacted Harbour in New Hampshire to terminate their Broker Agreement, its conduct can be attributed to Allied for purposes of the jurisdictional inquiry and Allied can be said to have directed its tortious conduct at New Hampshire. Allied's instruction to FinPac and FinPac's following contact with New Hampshire are clearly related to Harbour's claims. Accordingly, the relatedness prong is satisfied.

### 2. *Purposeful Availment*

Harbour must also demonstrate that Allied purposefully availed itself of the privilege of doing business in New Hampshire. "[T]he defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Northern Laminate, 403 F.3d at 25 (quoting United Elec., Radio & Mach. Workers of

-15-

America v. 163 Pleasant Street Corp., 960 F.2d 1080, 1089 (1st
Cir. 1992)).  "The cornerstones upon which the concept of
purposeful availment rest[s] are voluntariness and
foreseeability."  Daynard, 290 F.3d at 61 (quoting Sawtelle, 70
F.3d at 1391).  In Calder, the Supreme Court identified an
"effects test" to determine whether the purposeful availment had
been satisfied in intentional tort cases.  456 U.S. 783, 788
(1984).  To satisfy the effects test, more than the defendant's
mere knowledge that the plaintiff resides in the forum state is
required.  The plaintiff must show that the defendant aimed an
act at the forum state, knew the act would likely have a
devastating effect, and knew the injury would be felt in the
forum state.  Id. at 790; see also Noonan v. Winston Co., 135
F.3d 85, 91 n.4 (1st Cir. 1998) (holding that, in the tort
context, "the defendant must only be shown to have intentionally
directed an act, tortious or otherwise, toward the forum state").

     In the present case, accepting Harbour's allegations as
true, Allied's voluntary conduct made it abundantly foreseeable
that it would be sued in New Hampshire.  See Northern Laminate,
403 F.3d at 25-26 (holding that a New York defendant purposefully
availed itself of New Hampshire where, knowing full well that his
statements would induce the plaintiff's reliance, the defendant

-16-

made a misrepresentation in the face of the knowledge that his statements would likely cause financial injury to the plaintiff in New Hampshire).  The impact of Allied's actions in New Hampshire was not fortuitous or a mere result of Harbour's residence in New Hampshire.  Rather, Allied was aware that the major impact of its actions would be felt in New Hampshire and aimed its action at the forum state.  Despite the fact that the contract that was allegedly interfered with does not mention New Hampshire and shows a preference for Washington State, the October 21, 2008 letter indicates that FinPac's communication with Harbour was directed by Allied and motivated by Allied's interest in the litigation between Harbour and Allied's subsidiary, Direct, in New Hampshire.  Allied's instruction to FinPac was calculated to cause injury to Harbour in New Hampshire because of Harbour's ongoing New Hampshire litigation with its direct competitor and Allied's subsidiary, Direct, in New Hampshire.  Based on Allied's voluntary and purposeful acts, it could "reasonably anticipate being haled into court" in New Hampshire.  <u>World-Wide Volkswagen</u>, 444 U.S. at 297.  Accordingly, the purposeful availment prong has been satisfied.

Although Allied asserts that it is just as plausible that its alleged actions were motivated by a desire to make sure that

FinPac was not damaged by doing business with a litigious company
like Harbour, taking the facts offered by Harbour as true and
construing them in the light most favorable to its claim, I find
that the letter to Harbour indicates that Allied was motivated by
Harbour's litigation with Direct in New Hampshire, suggesting
that Allied sought to harm Harbour and benefit Direct in New
Hampshire.

### 3. *Reasonableness*

Finally, the reasonableness of the exercise of jurisdiction
over Allied must be considered in light of certain "gestalt
factors."  Daynard, 290 F.3d at 62 (citing World-Wide Volkswagen,
444 U.S. at 292).

> These gestalt factors include: the defendant's burden
> of appearing; the forum State's interest in
> adjudicating the dispute; the plaintiff's interest in
> obtaining convenient and effective relief; the
> interstate judicial system's interest in obtaining the
> most efficient resolution of the controversy; and the
> shared interest of the several States in furthering
> fundamental substantive social policies.

Northern Laminate, 403 F.3d at 26 (citing Burger King, 471 U.S.
at 477).

The factors favoring litigation of this dispute in New
Hampshire include New Hampshire's interest in redressing harms
against its citizens in New Hampshire.  New Hampshire has an

interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders.  See Ticketmaster, 26 F.3d at 211.  Further, Harbour's interest in obtaining convenient and effective relief from a court in its own state weighs in favor of litigation of this dispute in New Hampshire.  Although Allied contends that the interstate judicial system's interest in an efficient administration of justice would not be best satisfied by litigating in New Hampshire because potential witnesses and evidence will be located in Washington State and Washington D.C., the interest of the judicial system does not appear to cut in either direction here because potential witnesses and evidence are also located in New Hampshire.

The only gestalt factor weighing in Allied's favor is Allied's burden of appearing in New Hampshire.  Defending in a foreign jurisdiction, however, "almost always presents some measure of inconvenience, and hence this factor becomes meaningful only where a party can demonstrate a 'special or unusual burden.'"  Sawtelle, 70 F.3d at 1395 (quoting Pritzker, 42 F.3d at 64.  In the present case, Allied has provided no argument why the burden of defending in New Hampshire outweighs the factors favoring New Hampshire as a forum.

Jurisdiction over Allied in New Hampshire is certainly

-19-

reasonable.  Accordingly, I conclude that subjecting Allied to jurisdiction of the courts in New Hampshire would not violate the Federal Constitution.

**B.   WHETHER HARBOUR STATES A CLAIM UNDER RSA § 358-A:2 IN COUNT II**

RSA § 358-A:2 makes it unlawful for a person to unfairly compete or use "any unfair or deceptive act or practice in the conduct of any trade or commerce within this state."  In Count II, Harbour alleges that Allied violated the New Hampshire Consumer Protection Act, RSA § 358-A, "by instructing FinPac to discontinue its relationship with Harbour Capital due to the ongoing legal issues Harbour Capital is having with Direct Capital."  (Cmplt. ¶ 30).

Allied asserts that Count II fails to state a claim under RSA § 358-A:2 because Harbour has not, and cannot, sufficiently allege that any of Allied's actions occurred in New Hampshire as required by the statute.  Allied contends that the only unfair and deceptive practice alleged in the Complaint was Allied's instruction to FinPac to discontinue its relationship with Harbour, and that instruction did not occur in New Hampshire.  In response, Harbour concedes that Allied's unfair and deceptive act did not occur in New Hampshire but argues that RSA § 358-A:2 does

not require that the action in question take place within the territorial limits of New Hampshire.

I agree with Allied.  Although RSA § 358-A:2 is not free from ambiguity, the most natural way to read the provision is to construe it to cover a defendant's extra-territorial acts if those acts affect travel or commerce within the state.

Allied does not explain how its alternative reading of RSA § 358-A:2 can be squared with the statutory language.  Instead, it relies exclusively on several rulings by other judges on this court that have applied the statute in somewhat different contexts.  See Mueller Co. v. U.S. Pipe & Foundry Co., 2003 DNH 168, 2003 WL 22272135, at *6 n.5 (Oct. 2, 2003);  Environamics Corp. v. Ferguson Enters., Inc., 2001 DNH 175, 2001 WL 1134727, at *4 (Sept. 24, 2001); Pacamor Bearings, Inc. v. Minebea Co., Ltd., 918 F. Supp. 491, 504 (D.N.H. 1996).  These cases, however, do not conflict with my interpretation of RSA § 358-A:2.  In both Pacamor and Environamics, trade or commerce had occurred in New Hampshire.  In Pacamor, the court denied the defendant's motion to exclude evidence relative to conduct outside of New Hampshire because the territoriality requirement was satisfied by the fact that the defendant conducted business within New Hampshire.  918 F. Supp. at 504.  In Environamics, the court held that the

plaintiff's claim was sufficient to survive a motion to dismiss where the defendant shipped a product and its allegedly false documentation into New Hampshire.  2001 WL 1134727 at *4. Further, in <u>Mueller</u>, the court granted the defendant's motion to dismiss a claim under RSA § 358-A:2 where the plaintiff suffered harm within New Hampshire, but no commercial conduct occurred in the state.  2003 WL 22272135 at *6.

None of the cases cited by Allied persuade me that a defendant may injure trade or commerce in New Hampshire but escape liability under RSA § 358-A by remaining outside the state.  Thus, I reject Allied's motion to dismiss Count II because Harbour's complaint sufficiently alleges that Allied's allegedly unfair and deceptive act injured trade or commerce within the state.

### IV. <u>CONCLUSION</u>

For all of the foregoing reasons, I deny Allied's motion to dismiss (Doc. No. 8).

                              /s/Paul Barbadoro
                              Paul Barbadoro
                              United States District Judge
July 21, 2009

cc:  William E. Christie, Esq.
     Steven M. Gordon, Esq.
     James F. Ogorchock, Esq.
     John Mark Turner, Esq.