# <u>EXHIBIT 4</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

---

Harbour Capital Corporation,                )
                                            )
      Plaintiff                           )     Civil Action No. 08-cv-506-PB
                                            )
v.                                          )
                                            )
Allied Capital Corporation                  )
Financial Pacific Corporation,              )
                                            )
      Defendants                          )
_____)

## AFFIDAVIT OF DANIEL B. LIPSON

I, Daniel B. Lipson, under oath, hereby depose and state as follows:

1.     Beginning in May 2004, I became employed by Allied Capital Corporation ("Allied") as a Senior Associate.  I left Allied in September 2009 and am no longer employed by it.

2.     I was never a member of Allied's Board of Directors.

3.     I served on the Board of Directors on Financial Pacific Corporation ("Financial Pacific"), one of Allied's so-called "portfolio" companies. Portfolio companies were those in which Allied made an investment, either through equity or debt.

4.     Every year I, like other Allied employees, received mandatory compliance training.  In that training, I was advised about my separate duties as an Allied employee and as a member of the board of directors of a portfolio company.  During that training, I was instructed that Allied expected me to fulfill all my fiduciary duties owed to the companies, including duties of due care and loyalty to the companies and shareholders and to act reasonably and in good faith

5.      Consistent with my training and Allied's expectations, I used my independent judgment on what I thought was the best interests of Financial Pacific when I acted as a member of its board of directors.

6.      I first learned of Harbour Capital from John Fruehwirth who was serving as a director for Direct Capital Corporation, a company wholly owned by DCC Holdings, Inc., another company in which Allied owned a majority interest.

7.      Specifically, Mr. Fruehwirth informed me sometime in 2007, that he had learned during Direct Capital board meetings about ongoing litigation between Harbour and Direct Capital.  He told me the basic allegations involved in the lawsuit.

8.      Mr. Fruehwirth also told me about an email the president of Harbour Capital, had sent in the context of the litigation.  Mr. Fruehwirth told me its tone was very, very unprofessional.

9.      After learning about Harbour's behavior, Mr. Fruehwirth shared with me his concern that Harbour seemed so unprofessional that it could be a liability for Financial Pacific Corporation, on whose board of directors both Mr. Fruehwirth and I served.

10.      I agreed with Mr. Fruehwirth that terminating Harbour as a broker for Financial Pacific Leasing, Financial Pacific Corporation's wholly-owned subsidiary, was in the best interests of Financial Pacific Leasing and Financial Pacific Corporation, especially since I knew from the Financial Pacific 2008 quarterly board meetings that Harbour's contribution to the loan portfolio of Financial Pacific Leasing was relatively insubstantial.

11.      Thus, when Mr. Fruehwirth brought up Harbour during the Financial Pacific Corporation board meeting in October 2008 (at Financial Pacific's offices in Federal Way, Washington) and recommended that FinPac Leasing terminate its relationship with Harbour, I

agreed.  All the other board members agreed as well, and that is what we, as a board,

recommended.

12.     The only reason I agreed with such a recommendation was that I thought it was the

best course of action for Financial Pacific Corporation and FinPac Leasing.  I did not intend to

benefit Direct Capital.

This ends my affidavit testimony.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 10,

2010.

 /s/ Daniel B. Lipson
Daniel B. Lipson
